CALIFORNIA RURAL LEGAL ASSISTANCE, INC.; American Federation of Labor and Congress of Industrial Organizations; International Ladies' Garment Workers Union; Maria Rita Aguilar; Maria F. Castillo; and Salud Guillen, Plaintiffs,

v.

LEGAL SERVICES CORPORATION; Terrance J. Wear, President; and Legal Services Corporation Pacific Regional Office, Defendants.

No. C–89–1850 SAW.

United States District Court, N.D. California.

Nov. 30, 1989.

554

Altshuler & Berzon, Stephen P. Berzon, Michael Rubin, San Francisco, Cal., for plaintiffs.

Barger & Wolen, Hugh J. Cadden, Robert G. Levy, San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

Plaintiffs bring this class action to enjoin the enforcement of a regulation promulgated by defendant Legal Services Corpo-

ration ("LSC"). The regulation prohibits legal services programs, for a five-year period, from using funds supplied to them by LSC to provide legal services to permanent resident aliens who obtain their status under the Immigration Reform and Control Act of 1986 ("IRCA").[1] Plaintiffs claim LSC has no legal authority to issue the regulation.

The LSC regulation purportedly is based upon Section 245A(h) of the Immigration and Nationality Act, as amended by Section 201 of IRCA, 8 U.S.C. § 1255a. IRCA allows certain aliens who had been residing illegally in the United States to obtain legal status, but IRCA further provides that these newly legalized aliens are to be disqualified for a five-year period from receiving "program[s] of financial assistance furnished under Federal law ... as such programs are identified by the Attorney General." 8 U.S.C. § 1255a(h).

LSC issued its regulation on April 27, 1989, before the Attorney General had designated legal services as a disqualified program of financial assistance under IRCA. On July 12, 1989, the Attorney General issued a final rule designating legal services as such a program. 54 Fed.Reg. 29434 (1989).

The parties now bring cross-motions for summary judgment. In addition, plaintiffs move to withdraw Salud Guillen as a plaintiff and for class certification, and defendants move to dismiss plaintiffs American Federation of Labor and Congress of Industrial Organizations ("AFL–CIO") and International Ladies' Garment Workers Union ("ILGWU") for lack of standing.

### I. Standing

■ Defendants argue that union plaintiffs AFL–CIO and ILGWU have failed to

---

1. The LSC regulation provides in relevant part:

(a) Subject to all other eligibility requirements of the Act, an alien who is present in the United States and who is within one of the following categories shall be eligible for legal services:

(1) ... except that an alien who has adjusted his status to that of temporary resident alien under the provisions of section 245A of INA (section 201 of IRCA, 100 Stat. 3394, 8 U.S.C. 1255a) shall not be eligible for legal

assistance pursuant to the provisions of section 245A(h) of INA (8 U.S.C. 1255a(h)) for a period of five years, which commences on the date the alien is granted temporary resident alien status as determined by INS, whether or not such alien acquires the status of permanent resident alien during the five-year period, unless the alien can qualify independently under another exception to the general restrictions.

54 Fed.Reg. 18111, § 1626.4 (April 27, 1989).

demonstrate that they, or any of their members, will suffer harm from the legal services ban, and that the two unions thus lack standing to challenge the regulation. This argument is without merit.

Plaintiffs' complaint alleges, and declarations submitted by plaintiffs state, that the unions represent numerous members who are, or are in the process of becoming, legalized aliens and who use, or are eligible for, legal services. These members thus would be adversely affected if the LSC regulation is enforced. Plaintiffs' declarations also establish that one of the institutional purposes of the unions is to assist their members in obtaining legal representation and securing their legal rights. These facts, which defendants fail to rebut, are sufficient under applicable case law to establish the standing of plaintiffs AFL–CIO and ILGWU to sue. *See Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977); *International Union, UAW v. Brock,* 477 U.S. 274, 288–90, 106 S.Ct. 2523, 2531–33, 91 L.Ed.2d 228 (1986).

## II. Class Certification

■ Plaintiffs seek to represent a class consisting of:

(1) legal services programs who are or will be forced to discontinue representation of existing clients, refuse representation of future clients who are otherwise eligible for their services, and/or use alternative sources of funds to serve clients because of the Legal Services Corporation regulation promulgated at 54 Fed.Reg. 18109 (April 27, 1989) denying eligibility for legal services to Immigration and Nationality Act § 245A legalized aliens; and

(2) Section 245A legalized aliens who are or will be otherwise eligible for legal services but who are being or will be denied representation because of the Legal Services Corporation regulation promulgated at 54 Fed.Reg. 18109 (April 27, 1989) denying eligibility for legal services to Immigration and Nationality Act § 245A legalized aliens.

Plaintiffs in each subgroup meet the requirements of numerosity, commonality, typicality, and adequacy of representation set forth in Federal Rule of Civil Procedure 23(a). Further, plaintiffs satisfy the requirements of Federal Rule of Civil Procedure 23(b)(2) for a class seeking injunctive relief. *See Weathers v. Peters Realty Corp.,* 499 F.2d 1197, 1200 (6th Cir.1974). Therefore, class certification is appropriate.

Defendants object to class certification on the ground that the interests of the named plaintiffs conflict with each other and with the interests of the purported class they seek to represent. Contrary to defendants' assertions, however, all members of the class share the mutual goal of obtaining an injunction against enforcement of the LSC regulation.

Defendants also argue that the proposed class definition consisting of two subgroups is inappropriate. This contention is not well-taken. The Federal Rules authorize courts to divide a class into appropriate subclasses. *See* Fed.R.Civ.Pro. 23(c)(4); *Mendoza v. United States,* 623 F.2d 1338, 1349–50 (9th Cir.1980), *cert. denied sub. nom. Sanchez v. Tucson Unified School District No. 1,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981); *Community Action Programs Executive Directors Ass'n v. Ash,* 365 F.Supp. 1355 (D.N.J.1973) (certifying class to challenge government action consisting of one subgroup of individual beneficiaries of government plan and one subgroup of organizations funded to provide services to those individuals).

## III. Withdrawal

Plaintiffs move to withdraw Salud Guillen as a named plaintiff because he is not subject to the five-year disqualification regulation and thus is not a proper class representative. This motion is granted.

## IV. Summary Judgment

■ Plaintiffs contend that the Attorney General lacked authority under IRCA to designate legal services provided by LSC-funded legal services programs as a "program of financial assistance furnished under Federal law." 8 U.S.C. § 1255a(h). Defendants argue that the Court must defer to the Attorney General's determination. Employing traditional tools of statutory construction as set forth in *Chevron,*

*U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984), the Court finds Congress' intent to be clear that legal services are not a program of financial assistance under Section 1255a(h).

The statutory text demonstrates that Congress did not intend the term "financial assistance" to include service programs such as legal services. Section 1255a(h) distinguishes between programs of financial assistance that provide pecuniary aid, such as aid to families with dependent children ("AFDC"), and service programs, such as medical assistance and food stamp assistance that provide other forms of benefits.[2] This structure shows that Congress viewed service programs as being different and separate from financial assistance programs, such as AFDC. Further evidencing the limited nature of the term "financial assistance programs," when Congress referred to the broad range of federal assistance programs, including both financial assistance and other programs, it used the general terms "public welfare assistance," 8 U.S.C. § 1255a(h), or "assistance," *id.* at § 1255a(h)(2)(B), and not the limited term "financial assistance."

Additionally, Congress included Title XVII of the Social Security Act, 42 U.S.C. § 1391 *et seq.*, in its list of nine representative programs that are not programs of financial assistance. 8 U.S.C. § 1255a(h)(4). Title XVII, like LSC, provides funding for legal services. Thus, because Congress explicitly considered legal services funded by Title XVII not to be a program of "financial assistance," it must have intended that LSC-funded legal services would also be so considered.

Finally, Congress, in its annual LSC appropriations bills, has addressed the issue whether it intended legal services to be covered by the five-year ban. Each LSC appropriations bill passed since enactment of IRCA, while restricting the use of LSC funds to represent certain categories of aliens (such as undocumented aliens), has expressly authorized the eligibility of permanent resident aliens for LSC-funded legal services. *See, e.g.,* Pub.L. 100–202, 101 Stat. 1329 (1987); Pub.L. 100–459, 102 Stat. 2186 (1988).

Defendants argue that the absence of legal services from the list of nine programs expressly excluded from the definition of "program[s] of financial assistance" shows Congress' intent that legal services be considered a program of financial assistance. The programs listed in 8 U.S.C. § 1255a(h)(4), however, were part of a "clarifying amendment" illustrating the scope of coverage of Section 1255a(h). *See* 130 Cong.Rec. 16732–33 (daily ed., June 15, 1984). Congress did not intend the list to be exhaustive. H.R.Rep. No. 98–115(IV), 98th Cong., 1st Sess. 31 (1983).

Moreover, defendants cannot support their interpretation of IRCA by reference to Section 301(d)(6) of IRCA, 8 U.S.C. § 1161(d)(6). That section provides that the five-year prohibition on certain programs of financial assistance does not preclude the provision of legal services to Replenishment Agricultural Workers. The section cannot be read to mean that Congress intended that all other legal services programs to aliens are programs of financial assistance. It makes no sense that Congress would make express provision for non-immigrant, temporary residents to receive legal services if it did not believe that the same protection was similarly available to permanent resident aliens who have closer ties to the United States and are on their way to becoming United States citizens.[3]

2. Section 1255a(h)(1)(A) establishes three separate categories of benefit programs that may be subject to the five-year statutory ban: (1) "financial assistance," including AFDC; (2) "medical assistance;" and (3) food stamp assistance. 8 U.S.C. § 1255a(h)(1)(A). Thus, Congress considered medical assistance and food stamp assistance to be *non*-financial assistance programs, but specifically provided that these two programs would be covered by the five-year ban.

3. The Court also observes that Section 1161(d)(6) was added as an amendment to IRCA at the eleventh hour and was not integrated into the previously developed sections of IRCA which Congress drafted over several years and in several Congresses.

Because the parties' dispute is solely as to legal issues and there is no genuine issue of material fact, disposition by summary judgment is appropriate.

Accordingly,

IT IS HEREBY ORDERED that:

(1) Plaintiffs' motion to withdraw Salud Guillen as a plaintiff is GRANTED.

(2) Plaintiffs' motion for class certification is GRANTED.

(3) Defendants' motion for summary judgment, or, in the alternative, to dismiss is DENIED.

(4) Plaintiffs' cross-motion for summary judgment is GRANTED.

IT IS FURTHER HEREBY ORDERED that:

(1) Defendants Legal Services Corporation, Terrance J. Wear, and Legal Services Corporation Pacific Regional Office, and their officers, agents, successors, and employees, and all persons acting under or in concert with them are permanently enjoined from implementing or enforcing the provisions of the LSC regulation published at 54 Federal Register 18109 on April 27, 1989, regarding the five-year disqualification of Immigration and Nationality Act § 245A legalized aliens from LSC-funded representation.

(2) This injunction is binding on defendants Legal Services Corporation, Terrance J. Wear, and Legal Services Corporation Pacific Regional Office, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise.

(3) No person who has notice of this injunction shall fail to comply with the letter and spirit hereof nor shall any person subvert the letter or spirit hereof by any sham, indirection, or other artifice.

(4) The Court retains jurisdiction to modify this injunction at any time and from time to time on its own motion or upon the motion of any party in the interest of effectuating its intendments or furthering the ends of justice under all applicable law.